**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOY HOLMQUIST<br>43 W. Berkley Avenue<br>Clifton Heights, PA 19018 : | CIVIL ACTION |
| : | |
| Plaintiff,          : | No. _____ |
| : | |
| v.          : | |
| : | |
| EZ HOMES LLC          : | **JURY TRIAL DEMANDED** |
| 20 Limekiln Pike          : | |
| Glenside, PA 19038          : | |
| and          : | |
| EASY HOMES, PA LLC          : | |
| 20 Limekiln Pike          : | |
| Glenside, PA 19038          : | |
| and          : | |
| PRICELESS HOMES LLC          : | |
| 20 Limekiln Pike          : | |
| Glenside, PA 19038          : | |
| and          : | |
| JOHN DOE COMPANIES          : | |
| whose true names and address are presently : | |
| unknown          : | |
| and          : | |
| JAMES ZASPEL          : | |
| 20 Limekiln Pike          : | |
| Glenside, PA 19038          : | |
| and          : | |
| MARINA ZASPEL/AKA/LI ZASPEL/AKA: | |
| LI FANG          : | |
| 20 Limekiln Pike          : | |
| Glenside, PA 19038          : | |
| : | |
| Defendants.          : | |

<u>**CIVIL ACTION COMPLAINT**</u>

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## I. <u>INTRODUCTION</u>

1.      This action has been initiated by Joy Holmquist (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) to redress violations by EZ Homes LLC, Easy Homes PA, LLC, Priceless Homes LLC, Jim Zaspel, and Marina Zaspel (aka "Li Zaspel or "Li Fang") (*hereinafter* collectively referred to as "Defendants," unless indicated otherwise) of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201, *et. seq.*) and applicable state law(s).

## II. <u>JURISDICTION AND VENUE</u>

2.      This action is initiated pursuant to a federal law.  The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b) (1), venue is properly laid in this district because Defendants are residents of this district.

## III. <u>PARTIES</u>

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult individual, with an address as set forth in the caption.

7.     Defendant EZ Homes LLC, located at 20 Limekiln Pike, Glenside, PA 19038 is a real estate investment company.

8.     Defendant Easy Homes, PA LLC, located at located at 20 Limekiln Pike, Glenside, PA 19038 is a real estate investment company.

9.     Defendant Priceless Homes LLC, located at 20 Limekiln Pike, Glenside, PA 19038 is a real estate investment company.

10.     John Doe Companies is are also named as it is Plaintiff's information and belief that Individual Defendants own and operate multiple sham or shell companies in an effort to avoid corporate formalities, or certain state or federal obligations (and it is Plaintiff's intention to conduct a 30(b)(6) deposition during the course of discovery in order to adequately determine any additional appropriate entities owned or operated by Individual Defendants to be named in this action, which may include but are not limited to: Legacy Homes LLC, Millennial Construction, Red Dragon Investments, and Red Dragon Properties).

11.     The foregoing businesses shall hereinafter be collectively referred to as "Defendant Entities." Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendant Entities are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action.  They collectively employed Plaintiff.

12.     Defendant Jim Zaspel is upon information and belief, the President, Founder, and owner of Defendant Entities who controls and manages the terms and conditions of employment

3

for employees (including Plaintiff), including but not limited to hiring, termination, issuing discipline, and compensation.

13.     Defendant Marina Zaspel a/k/a Li Zaspel a/ka Li Fang is Defendant Jim Zaspel's wife, and upon information and belief is listed as owner of various Defendant entities, who shares in the control and management of the terms and conditions of employment for employees (including Plaintiff), including but not limited to hiring, termination, issuing discipline, and compensation.

14.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV. <u>FACTUAL BACKGROUND</u>

15.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16.     Plaintiff has worked for Defendants beginning on or about May 5, 2014. Relative to the job in which Plaintiff initially applied with Defendants, Defendants were advertising for an "assistant" to a real estate company, and identified the job duties as:

- Returning phone calls to buyers

- Filling out a form with buyer information

- Setting up showings (as needed)

- Follow up after showings (as needed)

- Book buyers into open houses

17.     Upon hire, Defendants offered Plaintiff an hourly rate, plus $1.50 per application taken from a buyer.

18.     At first, Plaintiff worked for Defendants in a telecommuting capacity, performing all services remotely from her residence in Peoria, Illinois, and was labeled a "Virtual Assistant."

19.     From on or about May 5, 2014 through June 22, 2014, Plaintiff was paid by a third-party company, labeled "Upwork" who placed Plaintiff to work for Defendants as a client (and in a virtual capacity).

20.     Following June 22, 2014, Plaintiff was then paid by Defendants (instead of Upwork) via Defendants' "PayPal" account, and was treated in all aspects as an employee of Defendants (i.e. they provided her schedules, work assignments, directed her day-to-day duties, and maintained control over all other terms and conditions of the employment relationship).

21.     From on or about June 22, 2014 through on or about October 24, 2015, Plaintiff was paid at an hourly rate of approximately $6.67 for hours worked performing "call time" (where she would be responsible for taking calls from prospective sellers and buyers, confirming appointments, and traditional telemarketer functions, including collecting data[1]), and an hourly rate of $10.00 per hour for hours worked performing "admin time" (where  she was responsible for data entry, updating the seller/buyer call logs, and other traditional office-related work). Plaintiff also continued to be paid a bonus or incentive for completing applications and, on occasion, was paid a discretionary bonus if a real-estate listing sold.

22.     Plaintiff's job (and primary duties) through on or about October 24, 2015 consisted of her performing secretarial, clerical, data entry, data collection, and some inside-sales work. Plaintiff did not manage employees, engage in hiring, termination, participate in any high-

---

[1] During the call, she was responsible for gathering information from the caller, and documenting that information in a form referred to as a "lead sheet."

level business or operational meetings on company finances or direction, did not have authority to enter into contracts, and lacked any meaningful discretion.

23.    From on or about October 24, 2015 through on or about December 28, 2015, Plaintiff's hourly rate was increased to $8.00 per hour for "call time," and $10.00 for "admin time" (and Plaintiff was still paid application fees and discretionary bonuses).

24.    From in or about mid-June of 2014 through December 28, 2015, Plaintiff consistently worked overtime, and was never paid at a rate of time and one half for any hours worked over 40.  Plaintiff' aforesaid duties did not change in any meaningful way through on or about December 28, 2015.  And Defendants never classified, characterized or informed Plaintiff she was exempt under state or federal overtime laws, as she performed non-exempt duties and was paid hourly and non-salaried (rendering any potential exemption inapplicable).

25.    Solely by way of example, during the aforementioned period through December of 2015, Plaintiff worked at least 5-10 hours, (and upwards of 20 hours or more of overtime per week beginning in October 2015), and was never compensated at a rate of time and one half (as required by state and federal overtime laws, discussed *infra*).

26.    Beginning on or about November 11, 2015, Individual Defendants discussed with Plaintiff, converting her title to "Office Manager," and making her a salaried employee at $50,000 per year plus 401(k), health benefits, and the prospect of bonuses at the end of each month (based on 2% company profits).[2]

---

[2] Defendant James Zaspel touted that the company made a million dollars the year before, and therefore, she would have earned a $10K bonus.  This, of course, encouraged Plaintiff to accept the offer, and was a representation she relied upon.

27.     Effective December 28, 2015, Plaintiff's title was changed to "Office Manager," and she was converted to a salaried employee, which payment she first received on or about January 4, 2016.

28.     With the change-over in title and salary, Plaintiff was anticipated to and did re-locate to the state of Pennsylvania to work within Defendants' central office location in Glenside, PA.

29.     In essence, instead of her job functions being virtual, they were now done live in person (and she maintained her prior hourly functions, duties or responsibilities).

30.     For example, once converted to salary, Plaintiff continued to take numerous telephone calls from sellers and buyers, GPREIA[3] member calls, collection calls, student calls, and all sales oriented calls whereby Plaintiff was required to read sales scripts (as Defendants were still having Plaintiff perform inside-sales representative functions).

31.     In her "new" job title, Plaintiff did perform some traditional office work required of an "office manager," including but not limited to ordering some office supplies from Staples (for example), scheduling painting to be done at the office or setting up utilities for the office (i.e. ADT), handling any broken office equipment or miscellaneous issues like furniture, scheduling work and personal appointments for Individual Defendants, coordinating events, updating Defendants' website (Plaintiff did not come up with the substantive content; she merely typed in what was asked of her, or updated any advertising on websites as directed),[4] and proof reading and editing documents for Defendant Jim Zaspel as per his directives.

---

[3] Greater Philadelphia Real Estate Investor Alliance (whereby Plaintiff would contact members to attempt to encourage them to attend meetings, answer questions about events and upcoming speakers, and respond to customer service issues for GPREIA members).

[4] Nearly everything Plaintiff dealt with was "scripted" or written by Defendant James Zaspel.

32.     Although Plaintiff did in fact perform some duties that would be expected of an office manager, Plaintiff's primary duties post-December 2015 were non-exempt duties such as clerical, data collection, data documentation, document gathering, and inside sales functions. Plaintiff was not eligible for a management exemption under state or federal law, as she did not customarily perform management duties, supervise employees or exercise control in hiring, discipline, terminations or promotions. Plaintiff was not eligible for an administrative exemption because: (1) her primary duties were not administrative as defined by state or federal law; and (2) she did not have requisite discretion to be exempt under such an exemption. Plaintiff was misclassified post-December 2015 as an exempt employee.

33.     In addition, Defendant Jim Zaspel sold various marketing programs, including hosting a marketing "boot camp" several times a year, and Plaintiff was required to act as a "telemarketer" and read a script for students to entice them to make referrals to these events.

34.     In connection with this marketing "boot camp," Plaintiff was responsible for collecting payments from these "students," creating email accounts for their assigned "mentors," scheduling calls, and assisting the students in creating student profiles, tracking registrants via a tracking sheet, handling registration, and setting up for these conferences, i.e. audio/video equipment and venue location(s).

35.     Plaintiff was also responsible for confirming speakers for various other events held by Defendants, where they made various sales pitches.

36.     As it pertained to the properties that Defendants bought or assisted in selling, if Defendants were short staffed, Plaintiff would have to do "gofer" work: i.e. go out to a property and take pictures, or ensure access to clients for their visits.

37.     Also as to Defendants' properties, Plaintiff was asked to keep track of those which closed, those which were under contract, those which required marketing, or status updates (i.e. if they were unhappy with negotiations through Defendants), and Plaintiff was asked to schedule time, date and location for closings.

38.     Plaintiff was asked to contact or follow up on any "leads" who were interested in selling their property (Plaintiff is not a real estate agent nor is licensed to do so), and was simply asked to get on the phone with prospective buyers/sellers to obtain their needs and discuss pre-delineated prices for sale.[5] Further, Plaintiff was responsible for becoming acquainted with a software program called Podio, which she used to enter information related to these properties.

39.     When Plaintiff began in her "new" title, she was doing a majority of the functions she did as an hourly employee, including sales calls, secretarial functions, clerical work, document collection, and inside sales duties. Plaintiff was never an administrative or management-level employee of Defendants as to her primary duties.  She was instead given a glorified title for her aforesaid non-discretionary tasks and also regularly asked to engage in duties that would be tantamount to debt collection or running errands.

40.     Plaintiff could not hire or fire employees; Defendants simply asked her as part of her job duties to perform typical clerical work as it pertained to hiring employees, such as posting ads for hire, responding to applicants, scheduling interviews, and submitting prescreen questions to prospective candidates (which were provided by Individual Defendants).

41.     Plaintiff did not create processes or procedures; she was however, asked to sit in on meetings regarding same, and then was asked to document the procedures to be used (for example marketing procedures agreed upon for leads), or relay them to other employees.

---

[5] Plaintiff had no say over the prices for these homes; it was all based on a pre-scripted formula Individual Defendant James Zaspel would create and sell.

42.      Plaintiff was also required to perform work akin to a "personal assistant" for husband and wife Individual Defendants, including running errands, running to the bank, going to Defendant James Zaspel's home to pack up his personal vehicle for seminars, schedule doctors' appointments for Individual Defendants' relative(s), order home appliances for Defendants, etc.

43.      Once she was converted to a salaried employee, Plaintiff was consistently working 60-70 hours per week or more.

44.      Plaintiff routinely worked weekends (either Saturdays or Sundays or both), where she would login to return phone calls, obtain information from the system, follow up with clients about showings (see what they thought and see if they were interested in making an offer). Plaintiff was, in fact, mandated to perform weekend work on Saturdays in connection with the boot camp seminars, as well GPREIA seminars.

45.      Approximately six (6) months into the salaried arrangement, Plaintiff had discussions with Individual Defendants about her rate of pay and payment of bonuses (as she believed Defendants were impermissibly withholding same), and she felt that Defendants were impermissibly characterizing her as a salaried employee based upon the duties she actually performed. Defendant had willfully failed to pay overtime for Plaintiff's initial job title and it seemed apparent to Plaintiff nothing she was doing in her re-titled role warranted non-payment of overtime.

46.      In or about July of 2016, Plaintiff informed Individual Defendants that under the FLSA, she was not exempt, as she did things that were almost entirely "task oriented," they controlled every aspect of her work, and nothing that she did qualified as a manager despite being labeled as a "manager." Plaintiff actually supplied Defendants with documentation

regarding the FLSA from a government website when lodging the aforesaid complaints and concerns of non-payment of overtime.

47.     Individual Defendants simply offered to have Plaintiff speak with their accountant (who Plaintiff knew was out in Utah, and was primarily retained by Defendants as they condoned a lot of Defendants' improper business dealings in the real-estate industry).

48.     Individual Defendants also assured Plaintiff that they had spoken with their lawyer (who also happened to be their next-door neighbor) who assured them Plaintiff was exempt.

49.     As a result of these discussions, Defendants then changed Plaintiff's title from "Office Manager," to "Office Manager, and Market Lead Manager." Defendants clearly attempted to use creative titling to circumvent state and federal overtime obligations.

50.     Defendants indicated that since Plaintiff was complaining, they would take the GPREIA and boot camp responsibilities away (and hire others to do it), and then Plaintiff would handle off market leads, including leads from Craigslist, direct mail leads, web leads – Google, those from signs set up around Philadelphia and the surrounding counties (i.e. Plaintiff's job duties did not change, instead she was just handling leads from varied sources and was focusing more on leads).

51.     However, persons would routinely quit or get terminated handling certain admin functions related to GPREIA or boot camp, and Plaintiff would soak up that work anyway. Despite Plaintiff's third change in job title, Plaintiff always had the same general primary duties.

52.     In or about January of 2017, Plaintiff received a tax document from Defendants, which identified her as a contract employee/self-employed (under "Priceless Homes").

53.     Plaintiff then spoke with Individual Defendant Marina Zaspel about the propriety of this tax document, which classified her as a contract employee, as well and her status as exempt vs. non-exempt, and that if Plaintiff had to – she would escalate things to the "feds" (and seek clarification from them about the true status of her classification of employment); thereafter, Defendants provided a corrected tax document showing her as a regular payroll employee (now under "EZ Homes").

54.     Defendant Marina Zaspel again offered for Plaintiff to speak with her accountant, and Plaintiff said she didn't need to – she had her own accountant if she wanted to speak with an accountant.

55.     The more Plaintiff complained about her compensation status, Defendant Marina's Zaspel's response was typically that they would try to stop having Plaintiff work all the hours she was, that Plaintiff should "document and procedureize" her job, and "things you should not be doing, we can delegate and hire other people" (of course, these were empty promises).

56.     Although Plaintiff was supposed to have 10 days' vacation and 5 days of personal time, Defendants refused to grant such days when Plaintiff attempted to utilize same, arguing that she hadn't "accrued" them (as in sufficient hours worked) – despite that Plaintiff is not an hourly employee.

57.     Plaintiff specifically informed Individual Defendant Marina Zaspel that they kept treating her as if she was an hourly employee – and either she is exempt or non-exempt (but they couldn't attempt to reap the benefits of her being an hourly employee only when it suited them, but didn't benefit Plaintiff – i.e. by paying her for all of the hours she had been working).

58.     Approximately two (2) weeks before her termination, Plaintiff complained to Individual Defendants again about her overtime-pay classification, and her treatment as a salaried employee vs hourly (as in the weeks leading up to her termination, she had continued discussions with Individual Defendants about her "accrued hours," and Defendants treating her no differently than the hourly employees).

59.     Individual Defendant James Zaspel brought Plaintiff in for a meeting on July 31, 2017 at which time he informed her she was being terminated; although he would not provide a specific reason, he did tell her that the "time has been coming, from things you have said and things you have done" (from Plaintiff's understanding this was in direct reference to her ongoing complaints regarding her compensation and proper employment classification).

60.     Thereafter, Individual Defendant James Zaspel provided Plaintiff with a full severance agreement and release, asking her to release any and all claims against the company (which is not a standard employment practice – in fact, they have never done this before to Plaintiff's knowledge).

61.     Plaintiff was performing her job well, without discipline, and in fact, was meeting all deadlines and goals provided to her.

62.     Plaintiff was never once told verbally or in writing that they were unhappy as to her performance or any other issues pertaining to her ability to the job (and Individual Defendants often referred to her as a "rain maker" and a "rock star").

63.     Internal emails and documents show Defendants were very happy with Plaintiff's progress and were planning to keep her until at least the end of 2017 (boasting how big her compensation would be at years' end based on her positive work performance).

64.     The only incidents Defendant James Zaspel could have been referring to in terms of the things she "had said and done" were her ongoing complaints about improper payment classification and pay practices by Defendants.  In fact, Plaintiff had been threatened to have her employment end or to have her job duties taken away leading up to her termination for raising overtime-pay concerns.

65.     As the aforementioned, Defendants' actions clearly demonstrates that these violations were willful, and Plaintiff seeks all wages she was owed going back three (3) years from the date of this Complaint.

**Count I**
**Violations of the Fair Labor Standards Act ("FLSA")**
**(Overtime Violations and Retaliation)**
**- Against All Defendants -**

66.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67.     At all times relevant herein, Defendants have and continue to be employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

68.     At all times relevant herein, Defendants to this Action were responsible for paying wages to Plaintiff.

69.     At all times relevant herein, Plaintiff was employed with Defendants as an "employee[s]" within the meaning of the FLSA.

70.     The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

71.     At all times during their employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

72.     Plaintiff worked in excess of 40 hours per week in the majority of weeks she worked for Defendants.

73.     Plaintiff was not properly paid for all hours that she worked in excess of 40 hours per week.

74.     Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages, as well as penalties and interest.

75.     In addition to owed overtime compensation, Plaintiff was unlawfully denied employee benefits (i.e. vacation and other benefits) and terminated from Defendants in retaliation for raising concerns and complaints of unpaid overtime compensation and misclassification. These actions constitute unlawful retaliation under the FLSA.

76.     Individual Defendants are personally liable because they are the owners of Defendant Entities and were responsible for the terms and conditions of employment for Plaintiff including but not limited to her compensation. Individual Defendants are also responsible for perpetuating company-wide unlawful payroll practices and ratifying same. Additionally, Individual Defendants personally and intentionally deceived Plaintiff regarding her compensation.

**Count II**
**Violations of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Overtime Violations)**
**- Against All Defendants -**

77.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

78.     Defendants' failure to pay overtime in the aforesaid manners also constitutes a violation of the PMWA.

79.     Defendant Individuals are personally liable because they are responsible for the terms and conditions of employment for Plaintiff including but not limited to her compensation.

### Count III
### Violation of the Pennsylvania Wage Payment Collection Law ("WPCL")
### (43 P.S. 260.3(a)-(b))
### - Against All Defendants -

80.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

81.     Plaintiff had an agreement with Defendants whereby Defendants agreed to compensate Plaintiff a particular percentage of net profits as a "bonus" on a monthly basis.

82.     However, Defendants either failed to pay monthly bonuses from January 2016 through August 2016, or seriously misrepresented Defendant Entities' profits for purposes of calculating Plaintiff's prospective bonuses earned throughout her period of employment.

83.     Defendants failed to compensate Plaintiff for all wages earned and owed during her employment.

84.     Plaintiff performed the agreed-upon services for Defendants, and Defendants failed to properly compensate Plaintiff for the services rendered as specified by the Parties' employment agreement (included but not limited to paying Plaintiff for all bonuses earned or paying for overtime hours worked).

85.     Individual Defendants are personally liable because they are the owner of Defendant Entities and were responsible for the terms and conditions of employment for Plaintiff including but not limited to her compensation. Individual Defendants were also responsible for perpetuating company-wide unlawful payroll practices and ratifying same. Additionally, Individual Defendants are personally and intentionally deceived Plaintiff regarding her compensation.

86.     These actions as aforesaid constitute violations of the Pennsylvania Wage Payment and Collection Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting payroll violations.

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to past lost earnings and wages, back pay, front pay, salary, pay increases, and bonuses.

C.      Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendants' actions;

D.      Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

E.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees if permitted by applicable law; and

G.      Plaintiff is permitted to have a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

Christine E. Burke, Esquire
Ari R. Karpf, Esquire
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: August 24, 2017

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Joy Holmquist | : | CIVIL ACTION |
| v. | : | |
| EZ Homes LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| | | |
|---|---|---|
| 8/24/2017 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 43 W. Berkley Avenue, Clifton Heights, PA 19018

Address of Defendant: 20 Limekiln Pike, Glenside, PA 19038

Place of Accident, Incident or Transaction: Defendants place of business
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☒ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Ari R. Karpf , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 8/24/2017 _____   ARK2484
Attorney-at-Law   Attorney I.D.# 91538

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/24/2017 _____   ARK2484
Attorney-at-Law   Attorney I.D.# 91538

CIV. 609 (5/2012)

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| HOLMQUIST, JOY | EZ HOMES LLC, ET AL. |

**(b)** County of Residence of First Listed Plaintiff Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1 U.S. Government Plaintiff

X 3 Federal Question *(U.S. Government Not a Party)*

2 U.S. Government Defendant

4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business In This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business In Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** — 310 Airplane, 315 Airplane Product Liability, 320 Assault, Libel & Slander, 330 Federal Employers' Liability, 340 Marine, 345 Marine Product Liability, 350 Motor Vehicle, 355 Motor Vehicle Product Liability, 360 Other Personal Injury, 362 Personal Injury - Medical Malpractice | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | **PERSONAL INJURY** — 365 Personal Injury - Product Liability, 367 Health Care/ Pharmaceutical Personal Injury Product Liability, 368 Asbestos Personal Injury Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | | | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** — 370 Other Fraud, 371 Truth in Lending, 380 Other Personal Property Damage, 385 Property Damage Product Liability | **LABOR** — X 710 Fair Labor Standards Act | **SOCIAL SECURITY** — 861 HIA (1395ff) | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | | 720 Labor/Management Relations | 862 Black Lung (923) | 480 Consumer Credit |
| 190 Other Contract | | 740 Railway Labor Act | 863 DIWC/DIWW (405(g)) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | 751 Family and Medical Leave Act | 864 SSID Title XVI | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | 790 Other Labor Litigation | 865 RSI (405(g)) | 890 Other Statutory Actions |
| | | 791 Employee Retirement Income Security Act | | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 893 Environmental Matters |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** 463 Alien Detainee | | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting | 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment | 530 General | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations | 535 Death Penalty | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | **Other:** 540 Mandamus & Other | **IMMIGRATION** — 462 Naturalization Application | |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | 550 Civil Rights | 465 Other Immigration Actions | |
| | 448 Education | 555 Prison Condition | | |
| | | 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

X 1 Original Proceeding

2 Removed from State Court

3 Remanded from Appellate Court

4 Reinstated or Reopened

5 Transferred from Another District *(specify)*

6 Multidistrict Litigation - Transfer

8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Fair Labor Standards Act "FLSA" 29USC201
Brief description of cause:
Violations of the FLSA.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes   No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 8/24/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

[ Print ]   [ Save As... ]   [ Reset ]